UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA CLARKE, as Personal Representative
for The Estate of JANIKA NICOLE EDMOND,
deceased,

      Plaintiff,

v

MICHIGAN DEPARTMENT OF CORRECTIONS, CO
DIANNA CALLAHAN, individually, A/RUM KORY
MOORE, individually, CO R'KIA TAYLOR,
individually, SGT. KRISTA SUBIC, individually, SGT.
LOREN HAILES, individually, CO HEATHER
WASHINGTON, individually, CO JOHANNA
BARTEL, individually, CO ALEXIA JOHNSON,
individually, CO LASHAWNA DONALD,
individually, CO TRACY MAUPINS, individually, RN
MARCIA PORTER, individually, CO JOLONDRA
MACK, individually, jointly and severally

      Defendants.

Case No.: 2:17-cv-10528-
RHC-DRG
Hon. Robert H. Cleland

**PLAINTIFF'S SECOND
AMENDED COMPLAINT
AND JURY DEMAND**

---

Cary S. McGehee P42318
Beth M. Rivers P33614
Channing Robinson-Holmes P81698
Pitt McGehee Palmer & Rivers P.C.
Attorneys for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
cmcgehee@pittlawpc.com
brivers@pittlawpc.com

David Steingold P29752
Law Offices of David S. Steingold
PLLC
Attorney for Plaintiff
400 Monroe St Ste 280
Detroit, MI 48226-2962
Main: (313) 962-0000
detroitdefender@yahoo.com

Rock Wood (P41181)
Clifton B. Schneider (P70582)
Lisa Geminick (P60964)

Stephen J. Francis (P55473)
Dold Spath & Kiriazas PC
Attorney for Defendant Moore
17190 Denver Street

| | |
|---|---|
| Attorneys for Defendants MDOC, Stewart, D. Johnson, Osterhout, Taylor, Subic, Hailes, Washington, Bartel, A. Johnson, Donald and Maupins<br>Michigan Department of Attorney General<br>Civil Litigation, Employment & Elections Division<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 373-6434<br>woodr5@michigan.gov<br>schneiderc1@michigan.gov<br>geminickl@michigan.gov | Detroit, MI 48224<br>(313) 886-7500<br>sjf@dskpc.com |

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which Plaintiff SHEILA CLARKE, as the duly appointed Personal Representative of the Estate of Janika Nichole Edmond, seeks relief and all damages that flow from Defendants' multiple violations of decedent Janika Nichole Edmond's rights, privileges, and immunities as secured by the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 1988.

2.     During the period between February 2013 and November 11, 2015, Defendants owed the Plaintiff's decedent, a prisoner incarcerated at the Washtenaw Huron Valley County Correctional Facility (WHV), a duty to protect her from the clear and known danger of suicide, which Defendants ignored, and from which they failed to protect her. In so doing, Defendants violated the rights of the Plaintiff's decedent to due process and to be protected from cruel and unusual punishment. These violations were a proximate cause of the death of Janika Nichole Edmond and of the consequent damages to her Estate.

3.     Plaintiff, SHEILA CLARKE, was the aunt of Janika Nichole Edmond whose death on November 11, 2015, was a proximate result of Defendants' deliberately indifferent and unconstitutional failure to respond to her serious

medical needs while she was a prisoner at the WHV.

4.    On behalf of the Estate of Janika Nichole Edmond, as the Personal Representative thereof, SHEILA CLARKE seeks all relief appropriate and allowable resulting from the constitutional violations Defendants inflicted upon Janika Nichole Edmond.

5.    As part of the aforementioned relief, Plaintiff seeks damages for the Estate, including any and all damages recoverable under the Michigan Wrongful Death Act, M.C.L.A. §600.2922(6), certain declaratory relief, an award of attorney fees and costs, and any further relief the Court deems proper.

## JURISDICTION

6.    This action arises under the United States Constitution, particularly under the provisions of the Eighth and Fourteenth Amendments of the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988.

7.    Jurisdiction is conferred by Title 28 U.S.C. §§ 1331 and 1343.

8.    Plaintiff brings suit against each Defendant in their individual capacities.

9.    All of the acts by Defendants as set forth herein, were executed by Defendants under the color of law and the pretense of the statutes, ordinances,

regulations, laws, customs, and usages of the State of Michigan, and by virtue of and under the authority of Defendants' employment with the State of Michigan. The Michigan Department of Corrections is responsible for, and does in fact, hire, train, supervise, and discipline wardens, deputy wardens, sergeants, assistant resident unit managers and resident unit managers, registered nurses and corrections officers of all grades in the performance of their duties.

10.   Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b) and because all events and controversies occurred in this jurisdiction.

11.   The amount in controversy is in excess of $75,000, exclusive of Plaintiff's claims for costs, attorney fees, interest and punitive damages.

## **PARTIES**

12.   Plaintiff, Sheila Clarke, is the duly appointed personal representative of the estate of the decedent, Janika Edmond. Plaintiff is a resident of the City of Adrian, Michigan.

13.   At all times relevant hereto, Plaintiff's decedent, Janika Edmond ("EDMOND") was a citizen and a resident of Ypsilanti, Washtenaw County, State of Michigan and of the United States and is entitled to all rights, privileges, and immunities accorded to all citizens of the United States.

14.   Defendant, Michigan Department of Corrections ("MDOC"), is an agency formed pursuant to the laws of Michigan, and one of the functions of the

MDOC is to organize, train, operate and discipline staff correctional officer personnel in correctional facilities, including the Women's Huron Valley Correctional Facility ("WHV"). The MDOC is also responsible for the development and implementation of policies and procedures for the operation and management of its facilities and its employees. It is further responsible for the care, custody and protection of individuals including EDMOND.

15.   Defendant, C.O. Dianna Callahan ("CALLAHAN"), was, at all relevant times, employed by the MDOC as a corrections officer at WHV and was therefore responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

16.   Defendant, C.O. Kory Moore ("MOORE"), was, at all relevant times, employed by the MDOC as a corrections officer at WHV and was therefore responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

17.   Defendant, C.O. R'Kia Taylor ("TAYLOR"), was, at all relevant times, employed by the MDOC as a corrections officer at WHV and was therefore responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

18.   Defendant, Sgt. Krista Subic ("SUBIC"), was, at all relevant times, employed by the MDOC as a sergeant at WHV and was therefore responsible for

ensuring that Defendants enforced and abided by the policies and regulations of the MDOC, the State of Michigan, and the United States. In addition, SUBIC's duties and responsibilities include the development and implementation of policies and procedures for the operation and management of WHV and its employees. She is further responsible for the care, custody and protection of individuals including EDMOND, and protecting them from unlawful treatment.

19.   Defendant, Sgt. Loren Hailes ("HAILES"), was, at all relevant times, employed by the MDOC as a sergeant at WHV and was therefore responsible for ensuring that Defendants enforced and abided by the policies and regulations of the MDOC, the State of Michigan, and the United States. In addition, HAILES's duties and responsibilities include the development and implementation of policies and procedures for the operation and management of WHV and its employees. She is further responsible for the care, custody and protection of individuals including EDMOND, and protecting them from unlawful treatment.

20.   Defendant, C.O. Heather Washington ("WASHINGTON"), was, at all relevant times, employed by the MDOC as a corrections officer at WHV and was therefore responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

21.   Defendant, C.O. Johanna Bartel ("BARTEL"), was, at all relevant times, employed by the MDOC as a corrections officer at WHV and was

5

therefore responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

22.   Defendant, C.O. Alexia Johnson ("JOHNSON"), was, at all relevant times, employed by the MDOC as a corrections officer at WHV and therefore responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

23.   Defendant, C.O. Lashawna Donald ("DONALD"), was, at all relevant times, employed by the MDOC as a corrections officer at WHV and was therefore responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

24.   Defendant, C.O. Tracy Maupins ("MAUPINS"), was, at all relevant times, employed by the MDOC as a corrections officer at WHV and was therefore responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

25.   Defendant, RN Marcia Porter ("PORTER"), was, at all relevant times, employed by the MDOC as a registered nurse at WHV and was therefore responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

26.   Defendant, C.O. Jolondra Mack ("MACK") was, at all relevant times, employed by the MDOC as a corrections officer at WHV and was therefore

6

responsible for the care, custody and protection of individuals, including EDMOND, and protecting them from unlawful treatment.

## FACTUAL ALLEGATIONS REGARDING THE DEATH OF
## JANIKA NICHOLE EDMOND

27.   Plaintiff's decedent, Janika Edmond, was born on August 8, 1990 and was 25 years old at the time of the incident giving rise to this claim.

28.   Plaintiff, Sheila Clarke, was EDMOND'S aunt and childhood legal guardian.

29.   On or about February of 2013, EDMOND entered the WHV.

30.   EDMOND had a release date as early as April 2016.

31.   At or around the time that she was incarcerated at the WHV, Defendants were provided with a MDOC Sheriff's Questionnaire for Delivered Prisoners, which, pursuant to policy, has to accompany the prisoner to reception at WHV, and which notified the WHV that while she had been jailed in the Lenawee County jail, EDMOND had made multiple attempts and threats of suicide.  The Questionnaire specified that, in one instance, EDMOND tried to strangle herself with a sheet. It further stated that EDMOND had received medical and mental health treatment at the jail.

32.    Despite Defendants' knowledge of EDMOND's high risk, they failed to adequately address the risk or take steps to provide adequate treatment, increasing the likelihood of continuing suicide attempts.

33.    Prior to her suicide death, EDMOND had an extensive history of self-injurious behavior, suicidal ideation and attempts while incarcerated at WHV. This history included, but is not limited to:

      a.    On July 18, 2014, EDMOND attempted to hang herself by wrapping a towel around her neck;

      b.    On October 3, 2014, EDMOND attempted suicide by wrapping a cloth material around her neck;

      c.    On December 30, 2014, EDMOND attempted suicide by hanging herself;

      d.    On June 29, 2015, EDMOND wrapped plastic around her neck and pulled it tightly.

      e.    On July 23, 2015, EDMOND told a corrections officer she needed a "Bam Bam" and was put on 1:1 observation;

      f.    On July 27, 2015, EDMOND tied a bra around her neck in a shower stall;

      g.    On August 11, 2015, EMOND asked to be put on suicide precautions for her own safety; and

8

h.    On August 18, 2015, EDMOND wrapped a sheet around her neck while lying in bed.

34.   Prior to her suicide death in November of 2015, WHV had placed EDMOND on suicide precaution and suicide observation on multiple occasions. Prior to her suicide death, Defendants were well aware that EDMOND was at a high risk for a suicide attempt yet failed to take adequate steps to address the risk, including but not limited to proper supervision and treatment.

35.   Defendants in fact exacerbated Plaintiff's mental health conditions by the mistreatment and disregard for her condition.

36.   Prior to and during her incarceration, EDMOND suffered from mental illness and had been diagnosed as suffering from major depressive and mood disorders, among other things, for which she was prescribed medication.

37.   During her incarceration at WHV, EDMOND was on mental health outpatient status and being supervised by a prison doctor.

38.   Prior to her suicide death in November of 2015, Defendants were well aware that EDMOND suffered from mental illness.

39.   On September 11, 2015, Defendant MDOC issued a Mental Health Management Plan for EDMOND stating under the section entitled "Behavior to Observe and Report" disruptive behavior, refusal to take medication, and "any behavior or verbalization of harm to self or others".

9

40.   Despite knowledge of Janika Edmond's mental illness and suicide attempts, Defendants failed to properly treat her mental illness.

41.   At the time of her untimely death, EDMOND was incarcerated at WHV, Level IV.

42.   On November 2, 2015, EDMOND had been assigned to Unit C Segregation.

43.   Contrary to MDOC policy, and despite Defendants' knowledge of EMOND being a high risk for suicide, while EDMOND was waiting to be placed in a segregation cell, Defendants placed her in a shower area/module without adequate supervision or precautions.  In addition, although Defendants knew that in the past EDMOND had used a towel and/or other cloth material to attempt suicide by hanging herself, Defendants placed her in the shower area/module without removing all of her clothing.

44.   On November 2, 2015, at 12:49 p.m., as verified on the MDOC video camera located in the Segregation Control Unit, Defendant CO CALLAHAN walked EDMOND to a segregation unit shower/module.

45.   The segregation unit shower is located near the Segregation Control Unit where COs and other MDOC staff members are assigned to work.

46.   On the afternoon of November 2, 2015, upon information and belief, Defendants CALLAHAN, MOORE, TAYLOR, SUBIC, HAILES, WASHINGTON,

10

BARTEL, JOHNSON, DONALD, MAUPINS, PORTER and MACK were all working at the Segregation Control Unit or in the vicinity of the shower/module where Defendant CALLAHAN placed EDMOND.

47.    From 12:49 pm to 2:03 pm, as verified by the MDOC video, multiple staff members, including Defendants CALLAHAN and MOORE, were aware that EDMOND was in a distressed state and Defendants did not alert mental health or take any steps to evaluate, assess or address the distress, despite knowledge of EDMOND's high risk of self-harm.

48.    At 2:03 p.m., as verified by the MDOC video, while Defendants, including Defendant CALLAHAN, are in the segregation shower/module, EMOND yelled that she "**wants Bam Bam" (a "Bam Bam" is a slang term for a suicide prevention vest), and that she should kill herself**.   EDMOND exhibited clear intent to engage in self-harm and Defendants, despite their knowledge of her high risk for such actions, failed to take any steps to prevent the injury, including but not limited to removing material that was readily available for executing the harm, contacting mental health, placing EDMOND in an observation area or taking any other steps to prevent the harm.

49.    Upon information and belief, EDMOND's cry for a Bam Bam and statement that she should kill herself were heard by all of the MDOC staff personnel in the area, including the Defendants CALLAHAN, MOORE, TAYLOR,

SUBIC, HAILES, WASHINGTON, BARTEL, JOHNSON, DONALD, MAUPINS, PORTER and MACK.

50.   Defendant MDOC's policy requires staff to immediately respond to life-threatening suicidal behavior.

51.   Specifically, Policy Directive ("PD") 04.06.183 (L), states: "When a mental health emergency is suspected, custody staff shall place the prisoner in an observation room, or its reasonable equivalent in safety restrictions where an observation room is not available, e.g. in the Camp Program. Necessary precautions shall be taken to prevent him/her from engaging in behavior which is injurious to self, others, or property in accordance with PD 04.05.112, Managing Disruptive Prisoners and PD 04.06.115, Suicide Prevention."

52.   PD 04.06. 115(O) states in pertinent part:" "If a prisoner engages in suicidal or self-injurious behavior which is life threatening, **staff shall immediately respond** as set forth in PD 03.04.125 "Medical Emergencies".

53.   At no time relevant hereto, did any MDOC staff member immediately respond to EDMOND's life threatening suicidal behavior.

54.   Instead of complying with MDOC policy and responding to EDMOND's pleas for help, at 2:04 p.m., as verified by the MDOC video, Defendant CALLAHAN     yelled to her co-workers, including Defendants, and other prisoners in the area, including EDMOND, **"Somebody owes me lunch!"**

12

55.   CALLAHAN's callous disregard of EDMOND's obvious pain and suffering rose to the level of reckless and intentional harm which was the cause of EDMOND's self-injurious behavior.

56.   At 2:04 p.m., as verified by the MDOC video, Defendant CALLAHAN waved and pumped her fist three times into the air with her thumb up while nodding her head and looking in the direction of the Segregation Control Unit area. She repeated: "Somebody owes me lunch!"

57.   Upon information and belief, CALLAHAN made a bet with MOORE that EDMOND would become suicidal.

58.   At 2:05 p.m., as verified by the MDOC video, Defendants CALLAHAN and MOORE had a conversation about a Subway sandwich.

59.   At 2:07 p.m., as verified by the MDOC video, choking sounds can be heard coming from the shower/module area.

60.   Defendants CALLAHAN, KORY, MOORE, TAYLOR, SUBIC, HAILES, WASHINGTON, BARTEL, JOHNSON, DONALD, MAUPINS, PORTER and MACK all heard these choking sounds, and nevertheless, and in reckless disregard of EDMOND's health and safety, failed to take any steps to enter the cell or check on EDMOND or alert mental health or take any steps to evaluate, assess or address the distress, despite knowledge of EDMOND's high risk of self-harm.

61.   At 2:10 p.m., as verified by the MDOC video, more choking sounds can be heard coming from the shower/module area.

62.   Defendants CALLAHAN, KORY, MOORE, TAYLOR, SUBIC, HAILES, WASHINGTON, BARTEL, JOHNSON, DONALD, MAUPINS, PORTER, and MACK all heard these choking sounds, and nevertheless, and in reckless disregard of EDMOND's health and safety, failed to take any steps to enter the cell or check on EDMOND or alert mental health or take any steps to evaluate, assess or address the distress, despite knowledge of EDMOND's high risk of self-harm.

63.   At 2:11 p.m., as verified by the MDOC video, more choking sounds can be heard coming from the shower/module area.

64.   Defendants CALLAHAN, KORY, MOORE, TAYLOR, SUBIC, HAILES, WASHINGTON, BARTEL, JOHNSON, DONALD, MAUPINS, PORTER, and MACK all heard these choking sounds, and nevertheless, and in reckless disregard of EDMOND's health and safety, failed to take any steps to enter the cell or check on EDMOND or alert mental health or take any steps to evaluate, assess or address the distress, despite knowledge of EDMOND's high risk of self-harm.

65.   At 2:22 p.m., as verified by the MDOC video, almost 20 minutes after EDMOND asked for a suicide prevention vest and said that she should kill herself, Defendant SUBIC entered the shower/module area and discovered that

EDMOND had hung herself with her bra. At that time, Defendant SUBIC radioed for "health care and yard staff in Seg."

66.   MDOC personnel administered CPR and applied an automated external defibrillator to resuscitate EDMOND.

67.   At 2:45 p.m., Huron Valley Ambulance paramedics entered the shower unit and declared six minutes later that EDMOND had a pulse. They then transported EDMOND to St. Joseph Mercy Hospital.

68.   On November 2, 2015, at or around 3:30 p.m., EDMOND's biological mother, Christina Edmond, came to WHV to visit her daughter.

69.   Christina Edmond waited for over an hour at WHV to visit with her daughter. At no time did any MDOC staff notify her that her daughter had just attempted suicide and had been transported to the hospital. Instead, Ms. Edmond was told to go home because her daughter was not receiving visitors.

70.   No members of EDMOND's family were notified on November 2, 2015 by the MDOC that EDMOND had attempted suicide and was in the hospital.

71.   MDOC did not notify EDMOND's family of her suicide attempt and her precarious state at St. Joseph Mercy Hospital until November 3, 2016, nearly 24 hours after her suicide attempt.

72.   On November 6, 2015, at St. Joseph Mercy Hospital, EDMOND was declared brain dead.

73.   On November 11, 2015, EDMOND's life-monitoring devices were removed and she was pronounced dead.

74.   EDMOND's death is a direct result of Defendants' explicit disregard of MDOC policy, gross negligence, and deliberate indifference to EDMOND's health and welfare.

75.   Defendants' failure to properly treat EDMOND's mental illness and its actions in discriminating against her and punishing her because of it, exacerbated her mental difficulties, including her suicidal ideations, and caused her suicide.

76.   Defendant MDOC deliberately concealed EDMOND's suicide attempt from her family for nearly 24 hours, preventing her family from becoming aware of EDMOND's serious condition and being with her during the last days of her life.

77.   On November 9, 2015, Defendant CALLAHAN was suspended from employment and on March 10, 2016, she was terminated from employment with the MDOC as a result of her deliberate indifference, gross negligence, and misconduct which caused EMOND's untimely death.

78. On December 21, 2015, Defendant MOORE was suspended from employment and on March 10, 2016, she was terminated from employment with the MDOC as a result of her deliberate indifference, gross negligence, and misconduct which caused EMOND's untimely death.

79. Notwithstanding the obvious criminal implications surrounding EDMOND's death, and contrary to MDOC policy, and as a means to conspire to cover up Defendants' violations of EDMOND's constitutional rights, deliberate indifference, and its gross negligence, Defendants failed to immediately notify the Michigan State Police ("MSP") of EDMOND's suicide so that it could conduct a timely investigation into the circumstances of EDMOND's death.

80. On November 11, 2015, the MSP learned about EDMOND's suicide when the Washtenaw Medical Examiner contacted one of its Troopers because he was unable to obtain the information that he needed from the WHV facility in order to perform an autopsy and wanted to know who from the MSP was conducting the investigation.

81. The MSP had to take the initiative to contact the MDOC to find out about EDMOND's suicide and to start its investigation.

82. After the MDOC notified the MSP of EDMOND's suicide, it intentionally engaged in behavior intended to obstruct the MSP investigation

into the matter and to cover up its misconduct, deliberate indifference, and gross negligence, by among other things:

    a.    Refusing to timely provide the MSP and the Washtenaw Medical Examiner with the MDOC's Critical Incident Report;

    b.    Failing to preserve a potential crime scene and the evidence located therein;

    c.    Refusing to cooperate with the MSP's efforts to obtain evidence requiring it to obtain a search warrant; and

    d.    Failing, as asked by the MSP, to secure an  office        area containing investigative evidence while the MSP obtained a search warrant.

## COUNT I
## 42 U.S.C. § 1983 CONSTITUTIONAL DEPRIVATIONS
### (Plaintiff v. All Defendants except MDOC)

83.    Plaintiff hereby incorporates by reference the preceding paragraphs as though fully stated herein.

84.    Defendants are persons within the meaning of the term under 42 U.S.C. Section 1983.

85.    Plaintiff's decedent, EDMOND, was entitled to constitutionally protected rights as a citizen of the United States of America, such as a right to personal safety and right to medical care and protection encompassed in the

substantive component of the Due Process Clause of the Fourteenth Amendment.

86.   As an incarcerated prisoner in WHV, Plaintiff's decedent was also owed rights under the Eighth Amendment ensuring protection from cruel and unusual punishment, including the right to have reasonable measures taken to guarantee her safety and to treat her serious medical needs.

87.   Defendants, as Plaintiff's decedent's custodial caretakers, owed Plaintiff's decedent an affirmative duty to secure for her the constitutionally protected rights identified above.

88.   Defendants, knowing Plaintiff's decedent's medical needs, had a duty under state law, to instruct, supervise, train, direct, and conduct themselves and/or their employees to assure the delivery of medical care and supervision to Plaintiff's decedent that is consistent with her health and safety and which avoided the unreasonable risk of severe harm to her.

89.   The acts and omissions attributable to the Defendants under 42 USC Section 1983 were unreasonable and performed knowingly, deliberately, intentionally, maliciously, with gross negligence, callousness, and reckless indifference to Plaintiff's well-being and in  complete disregard of Plaintiff's safety, with wanton intent for Plaintiff to suffer the unnecessary and intentional infliction of pain, failure to obtain timely medical treatment, and failure to

properly train, supervise, develop and implement policies providing adequate medical and psychiatric treatment to a prisoner and by reason of which Plaintiff is entitled to compensatory and punitive damages.

90.   The conduct of the Defendants, individually and/or as agents of the State of Michigan, deprived Plaintiff's decedent, EDMOND, of her clearly established rights, privileges and immunities in violation of the Eighth and Fourteenth Amendments of the United States Constitution and of 42 USC Section 1983.

91.   The conduct of the Defendants, individually and/or as agents of the State of Michigan, exhibited a deliberate indifference by intentional acts and omissions and otherwise grossly negligent behavior so as to breach Plaintiff's decedent's right to basic safety and causing constitutional deprivation of her individual rights.

92.   Defendants not only breached this duty but also acted, under color of law, with gross negligence and deliberate indifference to Plaintiff's decedent's safety, protection and medical needs by:

> a.   Failing to properly render the proper medical attention to a prisoner who was diagnosed and generally recognized as mentally ill in violation of MDOC Policy Directive 03.03.130;

b.      Failing to properly train correction officers in the evaluation of whether a prisoner needs medical treatment in violation of MDOC Policy Directive 04.06.115;

c.      Failing to provide decedent with appropriate supervision given her medical needs and suicidal ideation;

d.      Failing to implement procedures necessary to effectively enforce requirements set forth in MDOC Policy Directive 04.06.115;

e.      Failing to properly address Plaintiff's decedent's immediate suicide risk recklessly disregarding decedent's suicidal history, decedent's Mental Health Management Plan, MDOC Policy Directives 04.06.115 and 04.06.183, and decedent's health and safety;

f.      Failing to promptly respond to Plaintiff decedent's recognizable medical emergency in reckless disregard and deliberate indifference to decedent's health and safety and in violation of MDOC Policy Directive 03.04.125;

g.      Failing to place Plaintiff's decedent in a safe environment so that she could not harm herself or others in violation of MDOC Policy Directive 04.06.183;

21

h.   Failing to properly supervise Plaintiff's decedent throughout the afternoon of November 2, 2015 knowing the risk decedent posed to herself;

i.   Failing to notify the Michigan State Police following Plaintiff's decedent's attempted suicide in violation of MDOC Policy Directive 03.04.125; and

j.   Acting or failing to act in other ways to expose Plaintiff's decedent to a known, extreme risk to her health and safety that may or will become known during discovery.

93.   As a direct and proximate result of the aforementioned conduct and omissions of Defendants, Plaintiff and Plaintiff's decedent suffered the following injuries and damages:

a.   As to the Decedent Janika Nichole Edmond:

i.   Conscious physical and emotional pain, suffering, anguish, distress, and fear;

ii.   Physical injury culminating in death;

b.   As to the Estate and survivors,[1] under the Michigan Wrongful Death Act, MCL §600.2922, *et seq.*:

---

[1] As allowed by 42 U.S.C. §§ 1983 & 1988, as it adopts and reflects the Michigan Wrongful Death Act, MCL § 600.2922, *et seq.*, see *Robertson v. Wegmann*, 438 U.S. 584 (1978); *Frontier Insurance Co. v. Blaty*, 454 F.3d 590, 598-99 (6th Cir. 2006).

      i.     Loss of love, society and companionship;

      ii.    Emotional distress and anguish;

      iii.   Loss of emotional support;

      iv.   Loss of services;

      v.    Loss of earnings and earning capacity;

      vi.   Loss of future economic support;

      vii.  Hospital, funeral, and burial expenses; and

      viii. Other damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, including punitive damages under 42 U.S.C. § 1983, in excess of $75,000.00 together with interest, costs and attorney's fees.

## COUNT II
## AMERICANS WITH DISABILITIES ACT (ADA) VIOLATION – DISCRIMINATION AND FAILURE TO ACCOMMODATE
### (Plaintiff v. Defendant MDOC only)

94. Plaintiff hereby incorporates by reference the preceding paragraphs as though fully stated herein.

95. At all times relevant hereto, Plaintiff's decedent, EDMOND, was an individual and Defendant MDOC was a public service within the meaning of the Americans with Disabilities Act ("ADA"), being 42 USC §12131, *et seq.*

23

96. At all times relevant hereto, EDMOND was a person with a disability in accordance with the ADA.

97. EDMOND was an individual with a disability in accordance with the ADA, in that she had a mental impairment that substantially limited one or more of her major life activities.

98. EDMOND'S disability was a major depressive disorder, suicidal ideation, and other psychological   disorders.

99. At all times relevant hereto, Defendant MDOC had a duty under the ADA to accommodate EDMOND unless the accommodation would impose an undue hardship. Defendants' duty to accommodate EDMOND includes, but is not limited to, providing her with ongoing adequate medical and mental health care, and when she threatened to commit suicide, transferring her to a safe location, properly supervising and monitoring her, and providing her with a suicide prevention vest upon request.

100. At all times relevant hereto, Defendant MDOC could have accommodated EDMOND's disability without suffering an undue hardship.

101. At all times relevant hereto, Defendant MDOC had a duty under the ADA not to discriminate against Plaintiff's decedent because of her disability. This duty included not discriminating against Plaintiff by further exacerbating her medical condition, making fun of her disability, placing a bet on whether

or not she would commit suicide, failing to provide Plaintiff's decedent with adequate medical care, failing to transfer Plaintiff's decedent to a safe location, and failing to provide Plaintiff's decedent with a suicide prevention vest upon request.

102. As a direct and proximate result of the aforementioned conduct and omissions of Defendants, Plaintiff and Plaintiff's decedent suffered the following injuries and damages:

    a.    As to the Decedent Janika Nichole Edmond:

        i.    Conscious physical and emotional pain, suffering, anguish, distress, and fear;

        ii.    Physical injury culminating in death;

    b.    As to the Estate and survivors,[2] under the Michigan Wrongful Death Act, MCL §600.2922, *et seq.*:

        i.    Loss of love, society and companionship;

        ii.    Emotional distress and anguish;

        iii.    Loss of emotional support;

        iv.    Loss of services;

---

[2] As allowed by 42 U.S.C. §§ 1983 & 1988, as it adopts and reflects the Michigan Wrongful Death Act, MCL § 600.2922, *et seq.*, see *Robertson v. Wegmann*, 438 U.S. 584 (1978); *Frontier Insurance Co. v. Blaty*, 454 F.3d 590, 598-99 (6th Cir. 2006).

    v.  Loss of earnings and earning capacity;

    vi.  Loss of future economic support;

    vii.  Hospital, funeral, and burial expenses; and

    viii. Other damages.

WHEREFORE, Plaintiff, SHEILA CLARKE, as Personal Representative of the Estate of JANIKA NICHOLE EDMOND, deceased, respectfully requests this Honorable Court enter Judgment in her favor and against Defendant MDOC jointly and severally, an amount in excess of $25,000, exclusive of costs, interest, attorney fees, and punitive and/or exemplary damages.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands the following relief, jointly and severally against all Defendants:

  (a) A declaration that Defendants violated the constitutional rights of Plaintiff's decedent, Janika Nichole Edmond;

  (b) Compensatory damages for physical, emotional, psychological, and economic injuries suffered by Plaintiff's decedent Janika Nichole Edmond and her Estate by reason of Defendants' unlawful and unjustified conduct, in an amount fair, just and reasonable and in conformity with the evidence at trial and as allowed by:

    i.  42 U.S.C. §1983; and

      ii.    42 U.S.C. §1988, including but not limited to damages recoverable under the Michigan Wrongful Death Act, MCL § 600.2922, *et seq.*

(c) Punitive and exemplary damages against the individual Defendants to the extent allowable by law;

(d) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(e) The costs and disbursements of this action; and

(f) Such other and further relief as appears reasonable, just and proper.

WHEREFORE, Plaintiff, Sheila Clarke, as Personal Representative of the Estate of Janika Edmond, deceased, respectfully requests this Honorable Court to enter judgment in her favor and against Defendants jointly and severally, for whatever sum she is found to be entitled together with costs, interest, and attorney fees.

Respectfully submitted,

Pitt McGehee Palmer & Rivers P.C.

By: /s/ Cary S. McGehee
      Cary S. McGehee P42318
      Beth M. Rivers P33614
      Channing Robinson-Holmes P81698
      Pitt McGehee Palmer & Rivers P.C.
      Attorneys for Plaintiff
      117 West Fourth Street, Suite 200
      Royal Oak, Michigan 48067
      (248) 398-9800
      cmcgehee@pittlawpc.com
      brivers@pittlawpc.com

27

By:  /s/ David Steingold
     David Steingold P29752
     Law Offices of David S. Steingold PLLC
     Attorney for Plaintiff
     400 Monroe St Ste 280
     Detroit, MI 48226-2962
     Main: (313) 962-0000
     detroitdefender@yahoo.com

Dated:  June 5, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA CLARKE, as Personal Representative
for The Estate of JANIKA NICHOLE EDMOND,
deceased,

        Case No.:
        Hon.

      Plaintiff,

v

MICHIGAN DEPARTMENT OF CORRECTIONS,
 CO DIANNA CALLAHAN, individually, A/RUM
KORY MOORE, individually, CO R'KIA TAYLOR,
individually, SGT. KRISTA SUBIC, individually, SGT.
LOREN HAILES, individually, CO HEATHER
WASHINGTON, individually, CO JOHANNA
BARTEL, individually, CO ALEXIA JOHNSON,
individually, CO LASHAWNA DONALD,
individually, CO TRACY MAUPINS, individually, RN
MARCIA PORTER, individually, CO JOLONDRA
MACK, individually, jointly and severally

      Defendants.

**DEMAND FOR JURY
TRIAL**

| | |
|---|---|
| Cary S. McGehee P42318 | David Steingold P29752 |
| Beth M. Rivers P33614 | Law Offices of David S. Steingold |
| Channing Robinson-Holmes P81698 | PLLC |
| Pitt McGehee Palmer & Rivers P.C. | Attorney for Plaintiff |
| Attorneys for Plaintiff | 400 Monroe St Ste 280 |
| 117 West Fourth Street, Suite 200 | Detroit, MI 48226-2962 |
| Royal Oak, Michigan 48067 | Main: (313) 962-0000 |
| (248) 398-9800 | detroitdefender@yahoo.com |
| cmcgehee@pittlawpc.com | |
| brivers@pittlawpc.com | |

Rock Wood (P41181)
Clifton B. Schneider (P70582)
Lisa Geminick (P60964)
Attorneys for Defendants MDOC, Stewart,
D. Johnson, Osterhout, Taylor, Subic,
Hailes, Washington, Bartel, A. Johnson,
Donald and Maupins
Michigan Department of Attorney General
Civil Litigation, Employment & Elections
Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
woodr5@michigan.gov
schneiderc1@michigan.gov
geminickl@michigan.gov

Stephen J. Francis (P55473)
Dold Spath & Kiriazas PC
Attorney for Defendant Moore
17190 Denver Street
Detroit, MI 48224
(313) 886-7500
sjf@dskpc.com

---

## DEMAND FOR JURY TRIAL

Plaintiff, Sheila Clarke, Personal Representative of the Estate of Janika Edmond, deceased, by and through her attorneys, Pitt McGehee Palmer & Rivers, P.C., and the Law Offices of David S. Steingold PLLC hereby requests a trial by jury in this matter.

Respectfully submitted,

Pitt McGehee Palmer & Rivers P.C.

By: /s/ Cary S. McGehee
　　　Cary S. McGehee P42318
　　　Beth M. Rivers P33614
　　　Channing Robinson-Holmes P81698
　　　Pitt McGehee Palmer & Rivers P.C.
　　　Attorneys for Plaintiff
　　　117 West Fourth Street, Suite 200
　　　Royal Oak, Michigan 48067
　　　(248) 398-9800
　　　cmcgehee@pittlawpc.com

brivers@pittlawpc.com

By: /s/ David Steingold
David Steingold P29752
Law Offices of David S. Steingold PLLC
Attorney for Plaintiff
400 Monroe St Ste 280
Detroit, MI 48226-2962
Main: (313) 962-0000
detroitdefender@yahoo.com

Dated: June 5, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause was served via the ECF filing system on June 5, 2018.

Signature:      /s/ Carrie Bechill
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cbechill@pittlawpc.com